Carlos F. Llinás Negret (Florida Bar No.73545)
**NELSON & FRAENKEL LLP**
601 South Figueroa St., Suite 2050
Los Angeles, CA 90017
Tel.: 213-943-6089
Fax: 213-622-6019
Email: cllinas@nflawfirm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CAROL SLOCUM HULSE, | CASE NO.: |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| vs. | |
| PRINCESS CRUISE LINES, LTD., d/b/a PRINCESS CRUISES | **(DEMAND FOR JURY TRIAL)** |
| Defendants. | |

CAROL SLOCUM HULSE ("Plaintiff"), by and through her attorneys NELSON & FRAENKEL, LLP, files this Complaint against PRINCESS CRUISE LINES, LTD., doing business as PRINCESS CRUISES ("PCL" or "Defendant"), owner and operator of the vessel CARIBBEAN PRINCESS.

Plaintiff respectfully alleges as follows:

## INTRODUCTION

### A. The Parties

1. At all times material, Plaintiff, CAROL SLOCUM HULSE, is and was an adult and a resident of Florida.

2. Defendant PRINCESS CRUISE LINES, LTD., d/b/a PRINCESS CRUISES was and is a Bermuda Corporation, with offices and business contacts in Miami, Florida.

3. Defendant PRINCESS CRUISE LINES, LTD., d/b/a PRINCESS CRUISES will be henceforth referred throughout this Complaint as "PCL" or "Defendant".

4. At all times material, PCL was the owner and operator of the vessel the M/S CARIBBEAN PRINCESS.

### B. Jurisdiction

5. This Court has jurisdiction over Plaintiff's claims under the maritime and admiralty jurisdiction of the Court, pursuant to Article III, §2 of the United States Constitution, delegating jurisdiction over admiralty cases to the federal courts, and 28 U.S.C. §1333.

6. Federal admiralty jurisdiction extends to all navigable waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable. The term 'navigable waters' means a body of water which, in its present configuration, constitutes a highway of commerce, between the states or with foreign countries. *See Complaint of Paradise Holdings, Inc.,* 795 F.2d 756 (9th Cir. 1986) ("To invoke federal admiralty jurisdiction in tort cases, the tort must occur on navigable waters and bear a significant relationship to traditional maritime activity.").

7. At all times material, the Plaintiff's injuries occurred while she was on board a vessel on navigable waters.

### C. Venue

8. Venue is proper in the Southern District of Florida pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391, and because (1) PCL is found and transacts business in this district; (2) PCL maintains a physical presence and its principal place of business in Miami within this district; and (3) The passenger-ticket issued to Plaintiff by PCL contains a forum selection clause, that PCL asserts requires all claims to be filed in this United States District Court.

### D. Personal Jurisdiction

9. PCL, at all times material hereto, personally or through an agent:

a. Maintained its principal place of business in this state and county;

b. Operated, conducted, engaged in or carried on a business venture in this state and or county; and/or;

c. Was engaged in substantial activity within this state; and/or

d. Operated vessels in the waters of this state; and/or

e. Purposefully availed itself of the benefits of conducting activities in Florida by directing their activities toward this state, thereby obtaining the benefits and protections of this state's laws.

10. PCL was engaged in the business of providing to the public, and Plaintiff in particular, for compensation, vacation cruises aboard its vessels which travel worldwide.

## GENERAL ALLEGATIONS

11. At all times material hereto, PCL owned, operated, managed, maintained and/or controlled the vessel, CARIBBEAN PRINCESS.

12. The CARIBBEAN PRINCESS derives directly from a class of cruise ships called the *Grand* class (the original Grand Class consisting of the M/S GRAND PRINCESS, CARNIVAL ADVENTURE, and CARNIVAL ENCOUNTER). This class of ship consists of several subclasses of sister ships with identical and/or similar design/features, *most* of which were built by the same company located in northern Italy (with the exception of the *Gem* class).

a. *Gem Class* (M/S DIAMOND PRINCESS and SAPPHIRE PRINCESS) are ships primarily based on the *Grand* class, but have a much larger funnel, with modifications to the placement of nightclubs and the number of restaurants onboard.

b. *Caribbean Class* (M/S CARIBBEAN PRINCESS) is a third version of the design with one additional deck. It introduced a poolside theater, that was later added to other Princess ships.

     c. *Crown Class* (M/S CROWN PRINCESS, EMERALD PRINCESS, and RUBY PRINCESS) a fourth PCL version of the Grand class with two additional decks. The Crown-class ships also feature the poolside theater like the *Caribbean* class.

13. PCL is a common carrier, and Plaintiff's claims of negligence herein fall within the parameters of 46 U.S.C. §30509 prohibitions against disclaimers and/or waivers. The statute's language is broad and unqualified, and it prohibits common carriers from limiting their liability for "personal injury or death caused by negligence or fault of the owner [of the passenger vessel] or the owner's employees or agents." See id. 30509(a)(1)(A).

14. On or about February 3, 2025, Plaintiff was a paying passenger on a PCL cruise ship, CARIBBEAN PRINCESS, for the purpose of embarking on a 14 night Eastern/Western Caribbean cruise from Fort Lauderdale, Florida to the Bahamas, Puerto Rico, Turks and Caicos Islands, and the Dominican Republic (hereinafter the "Subject Cruise").

15. On February 3, 2025, Plaintiff was attempting to disembark from the vessel, on deck 8. She was looking straight forward and suddenly slipped and fell backwards, landing on her back causing her severe and permanent injuries (hereinafter the "Subject Incident"). After the fall, Plaintiff noticed the material surface was substantially slippery. After the fall, Plaintiff also noticed she had stepped over a foreign orange sticky substance on top of that floor.

16. The CARIBBEAN PRINCESS crewmember's acts and omissions, including checking the safety conditions of the deck, removing any hazardous conditions from the walkway, failing to close off the area to passenger transit and failing to warn passengers of the hazardous conditions were, all times relevant and material, performed in the course and scope of their employment with PCL.

17. Prior to the incident, Plaintiff was unaware of any hazards presented by the subject deck, while attempting to disembark from the vessel, and was exercising

due care for her own safety. Upon information and belief, prior to the incident, the floor surface had been recently inspected, but the foreign orange sticky substance on top of that floor was not removed.

18. Furthermore, as this was during disembarkation of the vessel, upon information and belief, the transit area was unreasonably crowded and disorganized.

19. At all times relevant and material, Defendant PCL had actual and constructive notice that floor surfaces on foreseeable areas of passenger transit had the potential—and in fact did cause prior to the Subject Incident—injuries to passengers on PCL's ships. As a result, PCL knew about (or should have known by conducting a reasonable inquiry and inspection) of the dangerous conditions on the Subject Cruise. At all times relevant and material:

    a. PCL violated its own internal policies and procedures by failing to keep the area closed off to passenger transit;

    b. Many prior falls aboard defendant's vessels, upon information and belief, were substantially caused by the very types of walkway conditions that were a substantial contributing cause of the Plaintiff's incident and injuries. These prior mishaps and their causes were known to the Defendant prior to the Subject Incident.

    c. The conditions of the subject walkway in question, at all relevant times, are unreasonably dangerous and either were created by the defendant or existed long enough so that the defendant either knew or should have known of them and that they posed a clear and present danger to passengers.

20. At all times relevant and material, Defendant PCL had actual and constructive notice surfaces on foreseeable areas of passenger transit had the potential—and in fact did cause prior to the Subject Incident—injuries to passengers on PCL's ships. As a result, PCL knew about (or should have known by conducting a reasonable inquiry and inspection) of the dangerous conditions on the Subject Cruise. At all times relevant and material:

a. Defendant PCL controlled the vessel and crew responsible for the operation of the Subject Cruise, including employing crewmembers tasked with cleaning and monitoring surfaces open to the public. These crewmembers were also tasked with inspecting and correcting hazardous conditions to foreseeable passenger transit;

b. Defendant PCL procured and provided the means for passenger transit on the vessel, such as walkways on deck 8, including maintenance of the area of the Subject Incident, which was in the custody, possession and control of PCL, prior to and during passenger transit, and prior to and during the Subject Incident;

c. The CARIBBEAN PRINCESS has a guest capacity of 3,140 passengers with a total of 19 decks. PCL allowed—and encouraged—passengers to use public walkways on its decks. Accordingly, it was foreseeable to PCL that thousands of passengers would use deck 8 while in transit, making it necessary for it to be the subject of active and ongoing inspections to ensure it was free from hazardous conditions;

d. Prior to the Subject Incident, PCL was on notice of substantially similar incidents consisting of falls, during passenger transit on PCL's vessels, including:

   i. In *Hawkins vs. Princess Cruises Lines, Ltd.*, Case No.: 1:25-cv-25293-RAR, the complaint alleges that plaintiff, a passenger on the *Sapphire Princess*, tripped and fell on a deck protrusion into the path of foot traffic, which posed a tripping hazard to its passengers while in transit.

   ii. In *Peters vs. Princess Cruises Lines, Ltd.*, Case No.: 1:25-cv-24249-RAR, the complaint alleges that plaintiff was walking through a heavily trafficked corridor on Deck 16 when she slipped and fell. PCL failed to place warning signs, cones, mats, or verbal advisories to alert passengers of the hazard due to the floor being wet.

       iii.    In *Knigge vs. Princess Cruises Lines, Ltd.*, Case No.: 1:25-cv-25201-MD, the complaint alleges that plaintiff was travelling between decks and slipped and fell on a greasy substance due to PCL failing to monitor the subject area.

  e. Plaintiff anticipates additional substantially similar incidents will be uncovered during discovery.

21. The Defendant, before the Subject Incident, has been the target of several legal claims arising from such walkway hazards and/or risk factors, and their failures to remediate them.

22. At all times material and relevant, the Defendant chose not to systematically inspect its existing facilities to identify and locate hazardous walkway conditions and non-conformities with internal and/or external safety regulations, codes, standards, and guidelines.

23. The Defendant, at all relevant times, had sufficient notice of the probable, if not actual, existence of the hazards and risk factors in question aboard its vessels, so that the exercise of reasonable care required the Defendant to inspect its existing walkways and stairways to identify and locate such hazards, to correct them and/or to warn passengers.

24. The Defendant, at all relevant times, either negligently created the dangerous conditions that were a substantial contributing cause of the Plaintiff's incident and injuries, and/or, in the alternative, negligently failed to inspect for and identify them and/or fix them and/or warn passengers of their existence.

25. As a direct and proximate result of the Subject Incident, Plaintiff sustained severe and permanent injuries, including orthopedic injuries requiring invasive surgery.

# COUNT ONE

## FOR NEGLIGENT FAILURE TO WARN AGAINST DEFENDANT

26. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-25, and alleges as follows.

27. At all times material, Defendant owed a duty to its passengers, including Plaintiff, to exercise reasonable care for their health, welfare, and safety. This duty of care included the duty to warn Plaintiff of dangerous conditions, which Defendant knew or should have known upon reasonable inquiry.

28. This duty to warn encompasses dangers which the vessel owner knows or reasonably should have known about. Constructive notice of a dangerous condition can be inferred by evidence that the condition occurred in the area with sufficient regularity as to be foreseeable.

29. At all times material, Defendant, by and through its vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, undertook to create a dangerous and hazardous condition.

30. At all times material, Defendant, by and through its vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, was negligent, careless and breached its duty of care to the Plaintiff, by committing the following acts and/or omissions, including, but not limited to:

    a. Failing to adequately warn Plaintiff of the dangerous conditions on the subject area; and/or

    b. Failing to warn Plaintiff that other passengers had sustained injuries attempting to transit in walkways aboard PCL's vessels, including the CARIBBEAN PRINCESS; and/or

    c. Any and all other acts or omissions constituting a breach of Defendant's duty to use reasonable care discovered during litigation.

31. At all material times, Defendant had exclusive custody and control of the above-named vessel.

32. At all material and relevant times, Defendant created and/or knew or should have known of the above-described conditions through the exercise of reasonable care.

33. At all material and relevant times, Defendant negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazards, failed to modify the hazards and failed to properly warn Plaintiff of the hazards.

34. The above conditions were neither open nor obvious to Plaintiff, and accordingly, Defendant owed Plaintiff the duty to warn and/or correct them.

35. As a direct and proximate result of Defendant's negligence, Plaintiff was severely and permanently injured on or about February 3, 2025.

36. As a further and direct proximate result of Defendant's negligence, Plaintiff sustained serious and permanent injuries, pain and suffering, disability, mental anguish, inconvenience, and has incurred medical expenses in the past and will incur medical expenses in the future. All of said damages are permanent and continuing in nature.

## COUNT TWO

### FOR NEGLIGENT FAILURE TO INSPECT AGAINST DEFENDANT

37. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-25, and alleges as follows.

38. At all times relevant and material, Defendant owed a duty to their passengers, including Plaintiff, to exercise reasonable care for their health, welfare, and safety. This duty of care included the duty to inspect the subject area for hazardous conditions to make the necessary modifications and repairs to eliminate any hazardous condition.

39. Under the General Maritime Law, PCL owed Plaintiff a non-delegable duty to provide her a safe means of transiting while attempting to disembark the vessel.

40. At all times relevant and material, Defendant, by and through its vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, undertook to create a dangerous and hazardous condition.

41. At all times relevant and material, Defendant, by and through its vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, was negligent, careless and breached its duty of care to the Plaintiff, by committing the following acts and/or omissions, including, but not limited to:

   a. Failing to adequately inspect the subject area; and/or

   b. Failing to regularly inspect the walkways—and prior to Subject Incident—to ensure they were in good condition and free of defects; and/or

   c. Failing to regularly inspect for hazards and defects on or around walkways—and prior to Subject Incident—to ensure they were in good condition and free of defects; and/or

   d. Any and all other acts or omissions constituting a breach of Defendant's duty to use reasonable care discovered during litigation.

42. At all material times, Defendant had exclusive custody and control of the above-named vessel.

43. At all times relevant and material, Defendant created and/or knew or should have known of the above-described conditions through the exercise of reasonable care.

44. At all times relevant and material, Defendant negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazards, failed to modify the hazards and failed to properly warn Plaintiff of the hazards.

45. The above conditions were neither open nor obvious to Plaintiff, and accordingly, Defendant owed Plaintiff, the duty to warn and/or correct them.

46. As a direct and proximate result of Defendant's negligence, Plaintiff was severely and permanently injured on or about February 3, 2025.

47. As a further and direct proximate result of Defendant's negligence, Plaintiff sustained serious and permanent injuries, pain and suffering, disability, mental anguish, inconvenience, and has incurred medical expenses in the past and will incur medical expenses in the future. All of said damages are permanent and continuing in nature.

## COUNT THREE
## FOR NEGLIGENT FAILURE TO MAINTAIN

48. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-25 and alleges as follows.

49. At all times material hereto, it was the non-delegable duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

50. At all times material hereto, it was the duty of Defendant to maintain the subject deck and walkway in a reasonably safe condition.

51. Defendant and/or its agents, servants and/or employees breached its duty through the following acts and/or omissions:

 a. Failure to adequately maintain the subject area in a clean and/or dry manner so that passengers, including the Plaintiff, were reasonably safe aboard the vessel;

 b. Failure to adequately inspect and/or monitor the condition of the subject area;

 c. Failure to adequately and regularly maintain slip resistant materials and/or non-skid strips on the subject area;

    d. Failure to adequately and regularly inspect the subject area for unsafe flooring conditions so that passengers, including the Plaintiff, were reasonably safe aboard the vessel;

    e. Failure to adequately and regularly monitor the subject area to maintain it free of hazardous conditions so that passengers, including the Plaintiff, were reasonably safe aboard the vessel;

    f. Failure to adequately close off access to the area where plaintiff suffered her incident until such times as the condition causing Plaintiff's incident was corrected; and/or

    g. Failure to adequately clean the area where plaintiff suffered her injury;

    h. Other acts and/or omissions that may be revealed through discovery.

52. The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for Defendant's failure to adequately inspect and/or maintain the subject area.

53. At all times material hereto, the subject area was not properly or adequately maintained or inspected so that passengers, including the Plaintiff, could walk aboard the vessel in a reasonably safe manner, thereby creating a dangerous and/or hazardous condition.

54. At all times material hereto, Defendant knew of the foregoing dangerous conditions causing Plaintiff's incident and failed to inspect and/or maintain the subject area, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through Defendant's set up, maintenance, inspection and/or supervision of the subject area and/or through prior incidents involving slip and falls where the injured passenger alleged the floor was unreasonably slippery and/or unsafe flooring conditions while aboard Defendant's vessels and/or other vessels reported within the cruise industry.

55. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, loss wages, and loss of future earning capacity. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs. Further, the injuries resulting from her incident are permanent or continuing in nature and Plaintiff will suffer these losses and impairments into the future.

## COUNT FOUR

## FOR GENERAL NEGLIGENCE UNDER THE GENERAL MARITIME LAW AGAINST DEFENDANT

56. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-25 and alleges as follows.

57. At all times relevant and material, Defendant, by and through its vessel, crew, agents, servants, officers, staff and/or employees, who were acting in the course and scope of their employment and/or agency, was negligent, careless and breached its duty of care to the Plaintiff, by committing the following acts and/or omissions, including, but not limited to:

   a. Leaving a defect on the floor thereby obstructing and rendering hazardous a foreseeable path of travel; and/or

   b. Failing to maintain the floor in a reasonably safe condition; and/or

   c. Failing to keep and maintain the subject area in a reasonably safe condition; and/or

   d. Creating a dangerous condition and/or failing to remedy a dangerous condition which was known by the Defendant and which in the exercise of reasonable care should have been known by the Defendant; and/or

 e. Failing to take feasible and reasonable steps to eliminate a dangerous condition which was known by the Defendant and which in the exercise of reasonable care should have been known by the Defendants; and/or

 f. Failing to restrict passenger transit on the subject area on Deck 8, after creating hazardous and dangerous conditions;

 g. Any and all other acts or omissions constituting a breach of Defendant's duty to use reasonable care discovered during litigation.

58. At all times relevant and material, Defendant had exclusive custody and control of the above-named vessel.

59. At all times relevant and material, Defendant created and/or knew or should have known of the above-described conditions through the exercise of reasonable care.

60. At all times relevant and material, Defendant negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazards, failed to modify the hazards and failed to properly warn Plaintiff of the hazards.

61. The above conditions were neither open nor obvious to Plaintiff, and accordingly, Defendant owed Plaintiff the duty to warn and/or correct them.

62. As a direct and proximate result of Defendant's negligence, Plaintiff was severely and permanently injured on or about February 3, 2025.

63. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered an aggravation of known and unknown pre-existing conditions, suffered a loss of enjoyment and value of the cruise; suffered a loss of earnings and earning capacity. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

## COUNT FIVE

## NEGLIGENT DESIGN, INSTALLATION AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

64. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-25 and alleges as follows.

65. Defendant PCL actively participated in the design and construction of CARIBBEAN PRINCESS. Defendant, through its new-build department, in-house engineers, architects, designers and others actively participated in the design and construction of the decks and designated walkways which caused Plaintiff's injury and chose, or participated in choosing, the materials where the incident occurred.

66. Defendant contracted with design firms to design and construct the steps where this incident occurred, contracted with the shipyard to build the ship, stationed representatives at the shipyard to oversee construction and design elements, and through the contract documents and relationship as owner had the ultimate ability to reject or accept the design, construction, and materials used on the steps where Plaintiff slipped, tripped and fell.

67. Defendant was negligent in the design, construction, inspection and approval process of the ship for failing to select, construct and/or design the subject area to be reasonably safe under the circumstances.

68. Defendant knew or should have known through the exercise of reasonable care in the circumstances that the subject area posed an unreasonable trip/slip hazard and was inadequate to prevent a fall.

69. After installation, Defendant became aware that the poor design, construction, and/or maintenance of the subject area created a danger of tripping hazard. PCL should have changed the design, the material used and the maintenance of the area.

70. Notwithstanding Defendant's duty as aforesaid, Defendant breached its duty by unreasonably:

    a. Failing to properly design the subject area, and/or

    b. Failing to specify flooring design, construction, inspection and approval process during and after design and construction of the ship which was and is reasonably safe in the circumstances, and/or

    c. Choosing and approving a flooring surface which was not reasonably safe in the circumstances.

71. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered an aggravation of known and unknown pre-existing conditions, suffered a loss of enjoyment and value of the cruise; suffered a loss of earnings and earning capacity. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

## COUNT SIX

## NEGLIGENCE AGAINST DEFENDANT FOR THE ACTS OF ITS CREWMEMBERS BASED ON VICARIOUS LIABILITY

72. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-25 and alleges as follows.

73. Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

74. To the extent Defendant contests its direct negligence, it is nevertheless still vicariously liable for the acts and omissions of its crewmembers, including the crewmembers of the CARIBBEAN PRINCESS, that: a) caused and/or contributed to the dangerous condition, b) failed to adequately inspect, clean, and/or maintain the subject area of the incident, c) failed to close off the area of the incident, d) failed to warn passengers, including Plaintiff, of the risk creating and/or contributing to dangerous conditions causing Plaintiff severe and permanent injuries.

75.  The Eleventh Circuit has addressed circumstances in which maritime negligence claims are properly alleged under theories of vicarious liability in *Yusko v. NCL* (Bah.), Ltd., 4 F.4th 1164, 1167 (11th Cir. 2021) and *Holland v. Carnival Corp.*, 50 F.4th 1088 (11th Cir. 2022). In *Yusko,* the Eleventh Circuit held that "a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." 4 F.4th at 1170. The court accordingly reversed the district court's summary judgment on the plaintiff's negligence claim for failing to allege that Defendant was on notice of the risk-creating condition—a professional dancer's negligent dancing that caused injury. *Id.* at 1166. The court explained that although it "applie[s] the notice requirement when a shipowner is alleged to be directly liable for a passenger's injuries through, for example, the negligent maintenance of its premises …. the notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability." See also *Coletti v. Carnival*, 2024 WL 580355 (S.D. Fla. 2024)(Bloom, J.)("Defendant's contention that "[t]he Eleventh Circuit in Yusko explicitly reaffirmed the notice requirement for both negligent maintenance claims and for negligent failure to warn claims" is incorrect. ECF No. [11] at 4. As noted above, *Yusko* explicitly clarified that "the notice requirement does not—and was never meant to—*apply to maritime negligence claims proceeding under a theory of vicarious liability*[.]" Id. at 1167 (emphasis added). As already observed, "[a] plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both." *Id*.

76.  On February 3, 2025, Plaintiff was attempting to disembark from the vessel, on deck 8. She was looking straight forward and suddenly slipped and fell backwards, landing on her back causing her severe and permanent injuries.

77.  Upon Plaintiff's information or belief, the CARIBBEAN PRINCESS crewmember(s), a) negligently left a foreseeable area of high passenger transit wet

and/or in a hazardous condition, b) failed to close off the area to passenger transit, and c) failed to warn passengers, including Plaintiff, of the underlying hazardous conditions.

78. The CARIBBEAN PRINCESS crewmember(s) acts and omissions, failing to close off the area to passenger transit and failing to warn passengers of the hazardous conditions were, all times relevant and material, performed in the course and scope of their employment with PCL, for which PCL is vicariously liable.

79. At all times material these PCL crewmember(s) were agents, employees, and full-time members of the crew, acting in the course and scope of their employment relationship with PCL in that:

   a. The crewmembers were the employees of Defendant, or were Defendant's agents, apparent agents, and/or servants;
   b. The crewmembers were subject to the right of control by Defendant;
   c. The crewmembers were acting within the scope of their employment or agency;
   d. Defendant acknowledged that the crew and officers would act on Defendant's behalf, and they accepted the undertaking.

80. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered an aggravation of known and unknown pre-existing conditions, suffered a loss of enjoyment and value of the cruise; suffered a loss of earnings and earning capacity. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and for each of them, as follows:

1. For general and special damages according to proof;
2. For economic damages;
4. For prejudgment interest as allowed by law;
5. For costs of suit incurred herein;
6. For such other and further relief as the Court may deem proper.

NELSON & FRAENKEL, LLP

By: *s/Carlos F. Llinás Negret*
Carlos F. Llinás Negret
*Attorneys for Plaintiff*

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury.

Date: January 28, 2026.

NELSON & FRAENKEL, LLP

By: *s/ Carlos F. Llinás Negret*
Carlos F. Llinás Negret
*Attorneys for Plaintiff*